United States District Court
Southern District of Texas
**ENTERED**
January 13, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JD OLIVER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-1665 |
| | § | |
| PRAIRIE VIEW A&M UNIVERSITY, | § | |
| TEXAS A&M UNIVERSITY SYSTEM, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendants Prairie View A&M University and Texas A&M University System and E. Joahanne Thomas-Smith's Motions to Dismiss (Docs. 15, 18). The court has considered the motions, the responses, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motions be **GRANTED**. Additionally, the court sua sponte **RECOMMENDS** that Plaintiff's claims against the unserved defendants be **DISMISSED**.

### I. Case Background

Plaintiff brings this case against Defendant Prairie View A&M University and the Texas A&M University System (collectively, "Prairie View"), his former employer, and four individuals employed by Prairie View. Plaintiff alleges that Defendants violated his

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 5.

Fourteenth and Fifth Amendment rights to due process and discriminated against him on the basis of his gender under 42 U.S.C. Sections 1981 and 1983 by terminating him from his tenured position within the university.

A.  **Factual History**

The following factual account is derived from Plaintiff's live complaint.

Plaintiff was a tenured professor employed by Prairie View who taught computer science for thirty-two years.[2]  During the Fall 2013 semester, Plaintiff loaned a copy of a textbook to Lisa Mims, ("Mims") a student in one of his classes.[3]  On December 11, 2013, Plaintiff noted that Mims had not completed the final exam and had not returned his textbook, and emailed her regarding taking a make-up final.[4]  On December 14, 2013, Plaintiff had breakfast and, after experiencing side effects from medication, checked into a nearby motel.[5]  While he was at the motel, Mims contacted him by phone and agreed to meet him to return the textbook.[6]

That afternoon, Mims and three men forced their way into

---

[2]   See Doc. 14, Pl.'s Am. Compl.

[3]   See id. p. 8.

[4]   See id. p. 9.

[5]   See id. p. 10.

[6]   See id.

Plaintiff's motel room.[7]  The men demanded money, took photos of Plaintiff, and took his credit cards, cell phone, and eleven dollars in cash.[8]  After the group left, Plaintiff informed the front desk attendant, who called the police.[9]

The next day, Plaintiff received an email threatening to ruin his marriage, job, and reputation.[10]  On December 17, 2013, Mims and one of the men came to his home and left notes demanding money.[11]  Plaintiff did not respond to these demands.

On April 7, 2014, Mims filed a complaint against the university alleging misconduct by Plaintiff.[12]  Mims claimed that Plaintiff offered to give her an "A" grade in exchange for meeting him in his motel room.[13]  Mims spoke with Defendant Renee Williams ("Williams") in an in-person interview on May 29, 2014.[14]  In contrast, Williams interviewed Plaintiff by phone.[15]  Plaintiff avers that he was heavily medicated during the interview.[16]

---

[7]     See id. p. 11.

[8]     See id.

[9]     See id.

[10]    See id. pp. 11-12.

[11]    See id. p. 12.

[12]    See id.

[13]    See id.

[14]    See id. pp. 6, 12.

[15]    See id. p. 6.

[16]    See id. p. 6.

Plaintiff made a written request to meet with Williams in person, to which Williams did not respond.[17]  A security video of Mims and three men entering a motel room was never obtained by Williams during her investigation.[18]

On July 18, 2014, Plaintiff received a letter from E. Joahanne Thomas-Smith ("Thomas-Smith"),[19] the then-provost and senior-vice president for academic affairs, informing him that he was being discharged for allegedly arranging for a female student to meet with him in a motel room to "satisfy [his] sexual desires" in exchange for an 'A' grade."[20]

Oliver appealed the dismissal and a post-termination hearing was held on April 20, 2015.[21]  Per the amended complaint, Prairie View's president has not ruled on the appeal.[22]

## B. <u>Procedural History</u>

On June 16, 2015, Plaintiff filed the present lawsuit against Prairie View.[23]  On July 27, 2015, Defendant Prairie View filed a

---

[17] See id.

[18] See id. p. 5.

[19] Defendant Thomas-Smith is referred to as both "Johanne" and "Joahanne" Thomas-Smith.

[20] See Doc. 14, Pl.'s Am. Compl. pp. 3-5.

[21] See id. p. 7.

[22] See id.

[23] See id.

4

motion to dismiss based on a lack of subject-matter jurisdiction.[24] On August 18, Plaintiff filed an amended complaint that added Defendants Thomas-Smith, Williams, Howard Sylve, ("Sylve") a reporting officer assigned to investigate Mims' allegations, and George Wright, ("Wright"), the university president, in their individual capacities.[25]

On August 24, 2015, Defendant Prairie View filed a second motion to dismiss.[26] Plaintiff filed a response on September 10, 2015.[27] On October 20, 2015, Defendant Thomas-Smith filed a motion to dismiss.[28] Plaintiff filed a response on November 4, 2015.[29]

## II. Defendant Prairie View's Motion to Dismiss

Defendant Prairie View moves to dismiss Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1).

The court must decide a Rule 12(b)(1) motion before addressing any attack on the merits. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). Pursuant to the federal rules, dismissal of an action is appropriate whenever the court lacks subject matter

---

[24] See Doc. 11, Def. Prairie View's Mot. to Dismiss.

[25] See Doc. 14, Pl.'s Am. Compl.

[26] See Doc. 15, Def. Prairie View's 2nd Mot. to Dismiss. The court finds that Prairie View's first motion was rendered moot by this motion.

[27] See Doc. 16, Pl.'s Resp. to Def. Prairie View's Mot. to Dismiss.

[28] See Doc. 18, Def. Thomas-Smith's Mot. to Dismiss.

[29] See Doc. 19, Pl.'s Resp. to Def. Thomas-Smith's Mot. to Dismiss.

jurisdiction. Fed. R. Civ. P. 12(b)(1); 12(h)(3). Federal courts may exercise jurisdiction over cases only as authorized by the United States Constitution and the jurisdictional statutes. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001). A court may sua sponte raise a motion to dismiss for lack of subject matter jurisdiction at any time. See Perez v. Stephens, 784 F.3d 276, 280 (5th Cir. 2015) (stating that "it is axiomatic that we must consider the basis of our own jurisdiction, sua sponte if necessary"); Cephus v. Texas Health and Human Servs. Comm'n, No. H-14-696, 2015 WL 7313414, at *3 (S.D. Tex. Nov. 19, 2015). The party asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction. Kokkonen, 511 U.S. at 377; Howery, 243 F.3d at 916, 919. In considering such a motion, the court must take as true all uncontroverted factual allegations in the complaint. John Corp. v. City of Houston, 214 F.3d 573, 576 (5th Cir. 2000).

Prairie View argues that it should be dismissed for lack of subject-matter jurisdiction because it is not a "person" under 42 U.S.C. § 1983, ("Section 1983") and that Plaintiff's Section 1981, Section 1983, and contract claims are barred by Eleventh Amendment immunity. Plaintiff does not contest Prairie View's arguments, but notes that the amended complaint includes claims against three

6

officials in their individual capacities.[30]

Absent waiver by the state or Congressional abrogation, the Eleventh Amendment bars actions against a state entity in federal court by private parties seeking monetary relief. See Sherrod v. Prairie View A&M Univ., No. H-10-1858, 2011 WL 843936, at *2 (S.D. Tex. Mar. 8, 2011); Chacko v. Tex. A & M Univ., 960 F. Supp. 1180, 1197-98 (S.D. Tex. 1997). The State of Texas has not waived its sovereign immunity from suit in federal court for Section 1983 claims. See Aguilar v. Tex. Dep't of Criminal Justice, 160 F.3d 1052, 1054 (5th Cir. 1998); Jackson v. Texas S. Univ., 997 F. Supp. 2d 613, 624, 625 (S.D. Tex. 2014). Similarly, the state retains immunity from suit in breach of contract actions absent consent from the Texas Legislature. See Texas Nat. Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 854 (Tex. 2002). In order to gain consent, a plaintiff must use an administrative dispute-resolution process created by the legislature. Jackson, 997 F. Supp. 2d at 636-37. Here, Prairie View argues that it has not waived its immunity regarding any of Plaintiff's claims.

Plaintiff does not dispute that Prairie View is a state agency and is thus not a "person" for purposes of liability under Section 1983. Plaintiff does not contest Prairie View's argument that the court lacks jurisdiction under the Eleventh Amendment. See Will v.

---

[30] Plaintiff's amended complaint lists four individuals. Plaintiff omits Wright in his response. See Doc. 16, Pl.'s Resp. to Def. Prairie View's Mot. to Dismiss p. 2.

Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  For these reasons, the court **RECOMMENDS** that Plaintiff's claims against Prairie View be **DISMISSED**.

### III.  Defendant Thomas-Smith's Motion to Dismiss

Defendant Thomas-Smith has also filed a motion to dismiss, arguing that she is entitled to qualified immunity on Plaintiff's Section 1983 claims, thus arguing that Plaintiff has failed to state a claim pursuant to Rule 12(b)(6).  Plaintiff responds that Thomas-Smith should have evaluated all available evidence and that her failure to do so prevents her from invoking qualified immunity.

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the plausibility of the claims asserted, raising the "right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. 678.  A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555.  In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. 678.

When sued for a constitutional violation pursuant to 42 U.S.C.

§ 1983, a state employee may assert the affirmative defendant of qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Gentilello v. Rege, 627 F.3d 540, 547 (5th Cir. 2010)(finding qualified immunity applied in suit by professor against university supervisors).

While qualified immunity is an affirmative defense, a plaintiff "has the burden to negate the assertion of qualified immunity once properly raised." Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009). A plaintiff can meet this burden by alleging facts showing that a defendant committed a constitutional violation and that defendant's actions were objectively unreasonable in light of the clearly established law at the time of the defendant's actions. Atteberry v. Nocono General Hosp., 430 F.3d 245, 253 (5th Cir. 2005). The Fifth Circuit has stated that upon a pleading of qualified immunity, a plaintiff must meet a heightened pleading standard to explain why the defendant cannot maintain the defense. Schultea v. Wood, 47 F.3d 1427, 1433-34 (5th Cir. 1995).

In order to determine whether qualified immunity shields a defendant from liability the court must determine, first, whether

9

the facts as alleged and viewed in a light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009)). If the plaintiff cannot establish that the defendant violated a constitutional right, the inquiry ends and the state officer is entitled to qualified immunity. Saucier, 533 U.S. at 201.

In the present case, Plaintiff alleges that Thomas-Smith violated his Fourteenth Amendment due process rights when she terminated Plaintiff without inquiring into the completeness of the investigation conducted by Defendant Williams.[31] In a related argument, Plaintiff complains that Thomas-Smith failed to consider the motel security video or the extortion email from Mims because Williams failed to include those items in her investigation.[32] As Prairie View fails to challenge whether Plaintiff's allegation of an incomplete investigation states a constitutional violation, the court next considers whether Thomas-Smith's decision was objectively unreasonable.

In order to allege that Thomas-Smith's behavior was

---

[31] See Doc. 14, Pl.'s 1st Am. Compl. p. 5. Plaintiff's other due process allegations concern the other Defendants. Plaintiff complains that investigator Williams (1) conducted a biased investigation when she interviewed Mims in person but only conducted a telephone interview of Plaintiff; and (2) conducted an incomplete investigation when she failed to include the motel video and the extortion email in her investigation, failed to inquire into his medical conditions and failed to offer him an opportunity to be reinterviewed in a non-medicated state. Plaintiff complains that Defendant Sylve did not disclose that Plaintiff suffered from a number of medical conditions. Id. p. 6.

[32] Id.

objectively unreasonable, Plaintiff must do more than allege that Thomas-Smith's decision was made in error.  See <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991).  The Supreme Court has stated that public officials making decisions "in the good-faith fulfillment of their responsibilities" are entitled to qualified immunity.  <u>Wood v. Strickland</u>, 420 U.S. 308, 321 (1975).

Directed more specifically to the public school setting, school officials making discretionary decisions in the absence of clearly established law are entitled to a high degree of deference in their ordinary decision-making.  See <u>Morgan v. Swanson</u>, 755 F.3d 757, 760 (5th Cir. 2014).  Plaintiff must therefore show that Thomas-Smith either knowingly violated the Constitution or was "plainly incompetent" in making her decision.  See <u>Hunter</u>, 502 U.S. at 229; <u>Brumfield v. Hollins</u>, 551 F.3d 322, 326 (5th Cir. 2008). "A defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." <u>Thompson v. Upshur Cty.</u>, 245 F.3d 447, 457 (5th Cir. 2001).  The reasonableness of an official's actions is based on the information available to the official at the time.  <u>Porter v. Ascension Parish Sch. Bd.</u>, 393 F.3d 608, 614 (5th Cir. 2004).

It appears from the undisputed facts in Plaintiff's complaint that Thomas-Smith made a discretionary decision and relied on the

11

outcome of an investigation made by others in making the decision to terminate Plaintiff.  The court finds that such decision was not objectively unreasonable given the evidence before her at the time of her decision; Plaintiff has not alleged that Thomas-Smith knew of any additional evidence or explained how Thomas-Smith's reliance on Williams' report violated a clearly established constitutional right or was otherwise unreasonable.  See Porter, 393 F.3d at 614.

Plaintiff's arguments regarding the need for a deposition are irrelevant, as Thomas-Smith's right to a determination of qualified immunity is based on the facts as alleged by Plaintiff.  See Mitchell v. Forsyth, 472 U.S. 511, 526 ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.")(citation omitted).  Because her decision to terminate Plaintiff's employment was not objectively unreasonable, Thomas-Smith is entitled to qualified immunity on Plaintiff's Section 1983 claims and the court therefore **RECOMMENDS** that those claims be **DISMISSED**.[33]

Thomas-Smith additionally argues that Plaintiff's breach of

---

[33] Thomas-Smith also argues that Plaintiff cannot maintain a Section 1981 claim based on his gender.  The court agrees.  Section 1983 provides Plaintiff his only remedy against state officials in their individual capacity for allegations of race discrimination pursuant to Section 1981, a claim he does not make.  See Oden v. Oktibbeha Cnty., 246 F.3d 458, 463 (5th Cir. 2001) (holding that Section 1981 does not provide a means of recovery against a governmental entity); Bobo v. ITT, Continental Baking Co., 662 F.2d 340, 343 (5th Cir. 1981)(allegations of gender discrimination do not fall within Section 1981). Additionally, Plaintiff has failed to plead any facts that would support a claim that Thomas-Smith engaged in gender discrimination.

contract claims against her in her individual capacity should be dismissed.

Here, Thomas-Smith argues that Plaintiff fails to identify what contract she allegedly breached, that she is protected by sovereign immunity for any contract made in her official capacity, and that she was not a party to any contract with Plaintiff.

Plaintiff does not dispute that Thomas-Smith was not a party to any express contract with Plaintiff.  Instead, Plaintiff avers that Thomas-Smith was party to an implied-in-fact contract regarding Prairie View's disciplinary procedures. Plaintiff states that the length of his employment, the lack of criticism of his work, and assurances he was given during his career constitute proof of an implied contract.

An implied contract requires the same elements as an express contract, that is: (1) an offer; (2) acceptance; (3) a meeting of the minds; (4) consent between the parties; and (5) execution and delivery of the contract with the intent that it be binding. Electrostim Med. Servs. v. Health Care Serv., 962 F. Supp. 2d 887, 899, (S.D. Tex. 2013).  For an alleged implied contract to be enforceable, not only must the parties agree to all terms, but the terms must be "clear, certain, and specific."  Id.

Plaintiff's theory of implied contract is unavailing. In support, Plaintiff alleges that Thomas-Smith owed a contractual duty to conduct a thorough and complete investigation and provide

13

him with a hearing, and that he was owed a continuation of his regular salary. Plaintiff does not explain what, exactly, the terms of this implied-in-fact contract might be, or that Thomas-Smith accepted the contract by some affirmative act or that a meeting of the minds took place. Plaintiff similarly does not explain how any implied contract arose in the face of express contracts such as Plaintiff's employment contract with Prairie View or any contract he signed regarding Prairie View's employment policy. In short, Plaintiff attempts to re-classify a denial of due process claim into a breach of an implied contract claim. Without facts supporting the presence of an implied contract, he has not raised a plausible claim for relief against Thomas-Smith in her individual capacity.

The court accordingly **RECOMMENDS** that Plaintiff's contract claims against Thomas-Smith be **DISMISSED**.

**IV.  Claims Against the Remaining Individual Defendants**

In his response to Prairie View's motion, Plaintiff argues that his complaint should not be dismissed because three defendants have not appeared in the lawsuit and that Plaintiff "is in the process of serving these defendants."[34]

A federal court is without personal jurisdiction over a defendant unless the defendant is served under Rule 4. <u>Omni</u>

---

[34]  <u>See</u> Doc. 16, Pl.'s Resp. to Def. Prairie View's Mot. to Dismiss p. 2.

Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). Under Rule 4(m), a plaintiff is required to serve a defendant within 90 days after the complaint is filed.[35] Fed. R. Civ. P. 4(m); Thrasher v. City of Amarillo, 709 F.3d 509, 511 (5th Cir. 2013). "A failure to comply with Rule 4(m)'s time requirement authorizes a district court to dismiss an action without prejudice, except upon a showing of good cause." Lozano v. Bosdet, 693 F.3d 485, 487 (5th Cir. 2012); see also Fed. R. Civ. P. 4(m). A plaintiff bears the burden of showing valid service or good cause for failure to effect timely service. Thrasher, 709 F.3d at 511.

"Proof of good cause requires at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." Id. (quoting Winters v. Teledyne Movible Offshore, Inc., 776 F.2d 1304, 1306 (5th Cir. 1985) (internal quotations omitted)). "Additionally, some showing of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified is normally required." Id. "Even if the plaintiff lacks good cause, the court has discretion to extend the time for service." Id. (citing Millan v. USAA Gen. Indem. Co., 546 F.3d 321, 325 (5th Cir. 2008)).

Here, Plaintiff amended his complaint on August 18, 2015,

---

[35] As of December 1, 2015. Prior to that date, a plaintiff had 120 days to serve a defendant. See Fed. R. Civ. P. Rule 4(m), 2015 Am.

15

adding defendants Thomas-Smith, Williams, Wright, and Sylve in their individual capacities. At the time of the filing of Plaintiff's amended complaint, Plaintiff had 120 days to serve the defendants under Rule 4(m). Plaintiff's response admitted that as of September 10, 2015, the individual defendants had not been served.[36] Plaintiff's service deadline under the then-current Rule 4(m) required that Plaintiff serve the individual defendants by December 16, 2015. That deadline has passed, and Plaintiff has served only Defendant Thomas-Smith.[37] To date, the remaining defendants have not made any appearance in this suit. Plaintiff has not requested more time or explained why he has been unable to serve the individual defendants.[38]

Because the individual defendants have not been served and the time to serve them has passed, the court **RECOMMENDS** that Plaintiff's claims against the remaining individual defendants be **DISMISSED,** without prejudice.

## V. Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' motions to dismiss be **GRANTED** and that the remaining individual defendants be **DISMISSED** for want of prosecution.

---

[36] See Doc. 16, Pl.'s Resp. to Def. Prairie View's Mot. to Dismiss p. 3.

[37] See Summons Issued to Defendant Thomas-Smith, dated Sept. 11, 2015.

[38] See Doc. 10, Return of Serv. Summons. Wright was served on behalf of Prairie View a month before he was added as a party in his individual capacity. However, he was not served in his individual capacity.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 13th day of January, 2016.

_____
U.S. MAGISTRATE JUDGE